JENNIE EISENBERG, Plaintiff, *v.* CELIA K. BRAND and Others, Defendants.

Supreme Court, Kings County, August 26, 1932.

*Isaac Strahl,* for the motion.

*M. Jason Gould,* opposed.

CUFF, J.  The action is one for personal injury. After some association with plaintiff in this action, counsel represented her in

the Surrogate's Court. He became dissatisfied with her as a client, and repeatedly urged her to engage another lawyer to prosecute this action. On May 2, 1932, he sent her a letter which in part stated: " Unless you authorize me to turn this case over to some other lawyer, I am considering that this case is closed." Counsel had done considerable work and made disbursements. Ordinarily, he should be paid like any other workman for the services he rendered. What is before me, however, is to determine whether or not the attorney's lien still exists, for plaintiff's attorney himself has joined in the application for the substitution.

The office of a lawyer is one of great importance. He is schooled in the substantive law, has studied the intricate rules of practice, and is familiar with the pitfalls made in this complex world for the uninitiated. He has the power of expression and is skilled in argument. The road he travels is technical, but he knows the turns — others get lost. One of the reasons why he represents people is that they could not find the way without his help. In the course of litigation he may disagree with his client; may lose faith in him; may even be humiliated by him. Nevertheless, he should remain at his side. The profession demands of him that he stand by under most trying conditions — lest, unprotected, his client fall down harder than justice requires. It may be that he should make no move against the other party, nor raise a defense to a charge projected, but, by the same token, he should not desert in the midst of the battle. The relation of attorney and client is a sacred one, and it binds the lawyer, although not the client, to continue to represent him until he is properly relieved.

It is clear that an attorney cannot leave his client in the middle of a matter, because he does not supply him with money, or by reason of any other difficulty, without running the risk of losing the benefit of that relation. (*Matter of Faithfull*, L. R., 6 Eq. 325; *Robins* v. *Goldingham*, L. R., 13 Eq. 440.)

The attorney is relieved when he has placed the case, and all the information he possesses concerning it, with another attorney chosen by the client. The relation of attorney and client lacks mutuality. It favors the client. He may leave at any time without penalty. The attorney has a right to quit, too (although honor bound to stay), but he is severely penalized. When he withdraws, he breaks the charm that sustained his lien. He himself has destroyed the relationship necessary to support that equitable right that insured payment of his fee.

In this instance, this attorney cannot be accused of deserting or in any way abandoning his client. There was no emergency at the time he wrote the letter. He had urged the client to get new counsel,

and later demanded it in writing. When he did that, however, he exercised his right to withdraw, and the law worked a forfeiture of his lien. After the letter of May second, the attorney had no further responsibilities to the client. The case was abandoned. Citations are numerous that abandonment of the case is fatal to an attorney's lien. I will cite *Matter of H*. (93 N. Y. 381, 384), wherein the court said in part: " Both orders were on the ground that M. had refused to go on with the case, or hold further intercourse with his client in regard thereto. He was, therefore, so far as the case in hand was concerned, as one dead or disabled. * * * Assuming, however, with the appellant, that the lien of an attorney would, under ordinary circumstances, attach to the final decision in such proceeding [citing cases], it cannot now be claimed by him, for he refused to do the act which would have rendered a judgment in his client's favor possible, and so waived a right to which he might otherwise have been entitled, and if for services rendered before judgment there was an inchoate right of lien, it was lost by his unqualified abandonment of the cause. * * * There is nothing to show that M. was to blame for not going on with the litigation, but he refused to do so, and even suggested the employment of another lawyer. To this implied consent he attached no condition, and afterward, without success, invoked the equitable interference of the court in regard to the costs in question."

The motion to substitute, which is consented to, is granted. That part of the motion which seeks to fix the amount of the attorney's lien is denied, as no lien exists.